**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

RENEE FOUNTAIN,

              Plaintiff,

     v.

COVENANT SECURITY SERVICES,
LTD., doing business as
COVENANT, and DOMINIC
FERRARA,

              Defendants.

1:15-cv-03183-NLH-AMD

**OPINION**

---

**APPEARANCES**:

HEIDI R. WEINTRAUB
WEINTRAUB & MARONE, LLC
801 N. KINGS HIGHWAY
CHERRY HILL, NJ 08034
    On behalf of Plaintiff

MICHAEL J. WATSON
WILLIAM M. TAMBUSSI
BROWN & CONNERY, LLP
360 HADDON AVE
P.O. BOX 539
WESTMONT, NJ 08108
    On behalf of Defendants

**HILLMAN, District Judge**

Presently before the Court is the motion of Defendants for summary judgment on Plaintiff's claims that Defendants violated the New Jersey Law Against Discrimination when she was treated differently based on her gender and was terminated for complaining about harassment by her supervisor.  For the reasons expressed below, Defendants' motion will be granted in part and

denied in part.

## BACKGROUND

Defendant Covenant Security Services, LTD. provides security and protection services to clients at facilities across the nation and in the State of New Jersey.  Plaintiff Renee Fountain began her employment with Covenant as a security guard on October 2, 2010.  During her employment with Covenant and up to the date she was terminated from her employment – March 29, 2013 - Plaintiff worked at the Mission Solutions Engineering ("MSE") facility located in Moorestown, New Jersey.  Covenant's primary client contact at MSE was Francis McKenna, a MSE security operations manager, and Plaintiff was supervised by Samuel Banks, the Covenant site manager at MSE.

Plaintiff and one other security guard were the only women employed by Covenant as security guards at MSE.  Within a month or two of her employment with Covenant, Plaintiff contacted Defendant Dominic Ferrara, Covenant's Vice-President of Operations, by telephone to complain about Banks' harassment of her because she is a woman.  In April 2012, the other female security guard resigned, leaving Plaintiff as the only woman supervised by Banks at MSE.

In July 2012, MSE permanently consolidated two of its engineering facilities in Moorestown into one facility.  As a result, MSE required less security guards.  Covenant determined

to reduce all security guards' hours, rather than to lay off any guards.

After Covenant adjusted the hours of its security guards, Plaintiff met with Ferrara and Ashely Dennis of Covenant's human resources department to express her belief that her hours were being reduced more than her male co-workers. Because she was not informed about any investigation into her concerns, on August 7, 2012, Plaintiff filed a complaint with the New Jersey Division on Civil Rights ("DCR") regarding the reduction of hours and her belief that her hours had been reduced because she is a woman. Covenant ultimately determined that Plaintiff's hours had been reduced to a greater extent than her male co-workers and her schedule was adjusted accordingly by the end of August.

Plaintiff claims, however, that once she filed her complaint with the DCR, she was continually discriminated against because she is a woman, and retaliated against for filing the DCR complaint and follow-up letters to Ferrara about Banks' harassing behavior. Plaintiff claims that Banks mistreated her by constantly humiliating, intimidating, sexually harassing, and embarrassing her in the front lobby in front of other people. Plaintiff also claims that Banks yelled at her and talked to her in a condescending way. For example, he would put his finger in her face and scream at her, disallow her to

3

get coffee and direct that her to make her own instant coffee
from the bathroom sink water, disallow her to eat lunch at her
desk, and blame her for the messy desk, all the while her male
counterparts were not similarly treated.

On November 30, 2012, Banks issued a written "corrective
action" to Plaintiff because Plaintiff broke the chain of
command when she spoke to an MSE upper-management employee about
a Covenant security guard who had expressed a troubling
sentiment to Plaintiff.  Plaintiff claims that the written
corrective action was discriminatory and retaliatory because
other male security guards, including Banks, spoke with MSE
employees and did not receive such a harsh sanction.

In February 2013, McKenna advised Covenant that because of
budget cuts and fiscal uncertainty, MSE would be reducing its
security shifts by 66 hours per week.  At that same time, on
February 4, 2013, McKenna sent an e-mail to Covenant management
addressing multiple complaints with regard to Plaintiff's job
performance: (a) Plaintiff had failed to put out traffic cones
as instructed; (b) Plaintiff was not covering extra escort
shifts as requested; (c) Plaintiff advised an MSE employee "this
place will be closing down"; and (d) Plaintiff was "not a team
player and I'm fed up with it."  According to McKenna, his
complaints about Plaintiff were not limited to the complaints in
the February 4, 2013 email, but were "the straw that broke the

camel's back." Plaintiff refutes the items in McKenna's email, and contends that McKenna, whom she claims knew about Plaintiff's DCR complaint and complaints about Banks, was Banks' cohort who endeavored to get rid of Plaintiff because she is a woman and a "complainer."

That same month, Covenant reviewed all of the personnel files for the security guards, which revealed that Plaintiff was the only security guard with any disciplinary history – the November 30, 2012 "corrective action." Plaintiff was also the only Covenant security guard about whom McKenna, Covenant's primary client contact at MSE, had complained. According to Covenant, it determined that the 66-hour shift reduction required it to lay off certain employees, as it would be infeasible and a "logistical nightmare" to only reduce the hours of all security officers at MSE like it had in the July 2012 consolidation. Covenant considered terminating Plaintiff in February 2013, but decided to keep her employed until the 66-hour shift reduction went into effect.[1] Plaintiff was terminated on March 29, 2013.

---

[1] According to Covenant, it decided that a part-time male employee, Donald Alterman, would also be laid off prior to the reduction in security shifts at MSE, but on March 8, 2013, Alterman voluntarily resigned from his employment. Plaintiff claims that Alterman's resignation, along with the delayed termination, provided Covenant with a convenient post-hoc excuse to support its purported legitimate business reason for terminating her.

Based on this series of events, Plaintiff claims that Covenant violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., when it treated her differently because of her gender, and when it retaliated against her because she complained of disparate treatment. Plaintiff also alleges that Ferrara is personally liable for NJLAD violations because he aided and abetted the discrimination. Defendants have moved for summary judgment in their favor, arguing that Plaintiff cannot meet her *prima facie* case for either her discriminatory treatment claim or retaliation claim, and she cannot otherwise rebut their legitimate business reason for her termination. Plaintiff has opposed Defendants' motion.

## DISCUSSION

### A.   Subject Matter Jurisdiction

Defendants removed this action from New Jersey state court to this Court pursuant to 28 U.S.C. § 1441. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff is a citizen of New Jersey, Defendant Ferrara is a citizen of the Commonwealth of Pennsylvania, and Defendant Covenant is an Illinois corporation with its principal place of business located in Illinois.

### B.   Standard for Summary Judgment

6

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by

7

affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **C.    Analysis**

        **1.   *NJLAD claims against Covenant***

"The NJLAD is one of New Jersey's leading legislative pronouncements that set forth the familiar proposition that the clear public policy of [New Jersey] is to eradicate invidious discrimination from the workplace."  Carmona v. Resorts Int'l Hotel, Inc., 915 A.2d 518, 528 (N.J. 2007) (quotation and citation omitted).  The NJLAD acknowledges the authority of employers to manage their own businesses, but what makes an employer's personnel action unlawful is the employer's intent.  Zive v. Stanley Roberts, Inc., 867 A.2d 1133, 1138 (N.J. 2005).

Plaintiff has the initial burden of establishing a *prima facie* case for each of her claims.  For her disparate treatment claim, which describes a situation where an employer treats some individuals less favorably than others because of a protected

characteristic, such as gender, see Gerety v. Atl. City Hilton

Casino Resort, 877 A.2d 1233 (N.J. 2005), Plaintiff must show:

1) she is a member of a protected class; 2) she was performing

her job at a level meeting her employer's legitimate

expectations; 3) she was subject to an adverse employment

action; and 4) the adverse employment action took place under

circumstances giving rise to an inference of unlawful

discrimination, Young v. Hobart West Group, 897 A.2d 1063, 1071,

(N.J. Super. App. Div. 2005).

For Plaintiff's retaliatory discharge claim, there are

three elements to Plaintiff's *prima facie* case: (1) plaintiff

engaged in a protected activity known by the employer; (2)

thereafter her employer unlawfully retaliated against her; (3)

her participation in the protected activity caused the

retaliation; and (4) she had a good faith, reasonable basis for

complaining about the workplace behavior.  Tartaglia v. UBS

PaineWebber Inc., 961 A.2d 1167, 1192 (N.J. 2008).

A *prima facie* claim for a violation of the NJLAD requires a

showing of the employer's discriminatory motive, but because it

is often difficult to find direct proof of discrimination, New

Jersey has adopted the procedural burden-shifting methodology

articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802–05 (1973).   Rossi v. New Jersey, 39 F. App'x 706, 709 (3d

Cir. 2002) (citing Peper v. Princeton Univ. Bd. of Trustees, 77

9

N.J. 55, 81-84, 389 A.2d 465 (1978)).

Under the McDonnell Douglas standard, after a plaintiff establishes a *prima facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions.  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  This is a light burden.  Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production returns to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion.  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Prod. Inc., 530 U.S. 2097 (2000)).  "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's

10

proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."  Fuentes, 32 F.3d at 764 (internal citations and quotes omitted).  To do this, plaintiff "must demonstrate such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."  Id. at 765 (internal citations and quotes omitted).

Although Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, it is a "rather modest" burden that is meant to "demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent."  Henry v. New Jersey Dept. of Human Servs., 204 N.J. 320, 331 (2010).  "When evaluating the validity of a plaintiff's *prima facie* case, the court is to look solely at the evidence pled by the plaintiff, regardless of defendant's claims to the contrary."  Zive, 867 A.2d at 1139 (citations omitted).

Covenant argues that Plaintiff has not established her *prima facie* case for either of her claims.  Covenant challenges

Plaintiff's ability to show how it treated her differently than the male security guards, and it challenges her ability to show the causal link between her DCR complaint and her termination. The Court finds, however, that Plaintiff has met her modest burden of establishing her *prima facie* case for both her discrimination claim and her retaliation claim.

Plaintiff's disparate treatment claim centers on the unequal reduction in hours caused by the July 2012 MSE consolidation.[2]  Covenant does not dispute that Plaintiff's hours were reduced more than her male co-workers, and that she was the only female security guard at MSE at that time.  These facts are sufficient to state a *prima facie* case that Covenant may have treated her differently because she is a woman.

Plaintiff's proof also sets forth a *prima facie* case of retaliation.  Covenant argues that because seven months lapsed between Plaintiff's DCR complaint and her termination, Plaintiff cannot show the requisite causal connection between those two events to demonstrate discriminatory intent.  Covenant also argues that Plaintiff's November 2012 "corrective action" is an independent intervening act that cuts the causal chain between

---

[2] Plaintiff also claims that she was denied overtime, but Plaintiff has not presented sufficient evidence to show how she was denied overtime while her male co-workers were not.  Thus, no disparate treatment claim can be maintained on the denial of overtime hours.

the DCR complaint and termination.  Plaintiff's retaliation

claim is more complex than Covenant's simplified timeline.

Plaintiff claims that Banks' harassment of Plaintiff

because of her gender started within a few months of employment,

and resulted in unequal distribution of hours after the July

2012 MSE consolidation.  Because she did not believe Covenant

was investigating her concerns over Banks and her hours,

Plaintiff filed a complaint with the DCR on August 7, 2012.

Even though by August 25, 2012 Plaintiff's hours were back in

line with the male security guards, it is undisputed that

Plaintiff's hours had been reduced during the time she

complained to Covenant management and filed her DCR complaint.

Plaintiff attributes this to her gender.

From there, Banks and the management of Covenant knew about

her DCR complaint, Banks' harassment of Plaintiff increased, and

Covenant issued a "corrective action" against Plaintiff, which

discipline was not imposed on other Covenant employees,

including Banks, who also spoke with MSE employees.  Plaintiff

further contends that Banks and McKenna "had each other's back"

due to their shared history as former FBI agents, Banks and

McKenna were out to get Plaintiff because she was a

"complainer," and McKenna's email complaints about Plaintiff,

all of which Plaintiff denies, was conveniently sent at the same

time Covenant became aware that it would need to reduce its

13

staffing at MSE.  This series of events, when considered in the light most favorable to Plaintiff, readily shows that Plaintiff's participation in the protected activity - the DCR complaint - caused the retaliatory discharge.

Having established her *prima facie* cases, the burden shifts to Covenant to explain its legitimate business decision for its actions, with the burden then shifting back to Plaintiff to produce material disputed facts that cast doubt on those purported legitimate reasons.  With regard to Plaintiff's reduction in hours in July 2012, Covenant does not offer an explanation as to why Plaintiff's hours were reduced more drastically than the male security officers.  Covenant skips over the period between July 2012, during which time Plaintiff complained about the reduced hours and filed her DCR complaint, and points to the time after August 25, 2012 when her hours became in sync with the male security guards.  Without Covenant providing any legitimate business reason for the reduction of hours from July through August 25, 2012, Plaintiff has nothing to rebut.  Plaintiff, however, still retains the ultimate burden of persuasion to show that the reduction of hours was a result of Covenant's animus toward Plaintiff's gender, and it is for the jury to determine whether to credit Plaintiff's proofs on this claim.

For Plaintiff's retaliation claim, Covenant has offered a

14

legitimate business reason for Plaintiff's termination.

Covenant argues that it was required to reduce its security

guard staff, and Plaintiff was chosen to be laid off not because

of her DCR complaint and complaints about Banks' harassment, but

because she was the only security guard with a discipline

history, and the only security guard MSE complained about.

Plaintiff has presented sufficient proof, if believed by a

jury, to cast doubt on Covenant's proffered legitimate business

decision for Plaintiff's termination.  First, a jury could

believe that is not a coincidence that Plaintiff was the only

security guard McKenna complained about, and the only security

guard who received a "corrective action" for speaking with an

MSE employee, because she was the only woman security guard, and

the only woman who filed a DCR complaint complaining about

disparate treatment based on gender.

Second, a jury could believe that Banks and McKenna

manufactured the February 4, 2013 email complaints about

Plaintiff to provide Covenant with a "legitimate" reason for

terminating Plaintiff.  Even though Covenant argues that

responding to its client's complaints about an employee must be

accepted as legitimate even if the client's complaints are

ultimately not substantiated, the record does not contain

evidence that McKenna complained to Covenant management about

Plaintiff prior to notice of the 66-hour reduction at MSE, other

15

than the chain-of-command violation in November.  It is for a
jury to assess the credibility of the parties to decide whether
the complaints against Plaintiff were concocted as she contends,
or legitimate as Covenant contends.

Finally, Plaintiff points out that Covenant provided two
different reasons for her termination.  The April 2, 2013
employee termination form prepared by Ferrara lists the reason
for her termination as a layoff due to a reduction in hours.
The April 19, 2013 personnel action notice prepared by Banks
lists Plaintiff's termination as an involuntary termination due
to "client's dissatisfaction with subject."  A jury must assess
the import of Covenant's conflicting reasons for Plaintiff's
termination on Plaintiff's retaliation claim.

Consequently, because Plaintiff has provided proof, when
taken in the light most favorable to her, that demonstrates
weaknesses, implausibilities, inconsistences, incoherencies, or
contradictions in Covenant's proffered legitimate reason for its
actions that a reasonable factfinder could rationally find
unworthy of credence, Plaintiff's NJLAD disparate treatment and
retaliation claims against Covenant may proceed to trial.[3]

_____

[3] The Court must briefly address two arguments made by the
parties in their motion papers:

(1) Covenant argues that because Plaintiff testified that only
Banks discriminated against her, and not the Covenant personnel
who purportedly made the employment decisions - Ferrara and HR

16

### 2.    *Plaintiff's NJLAD claims against Ferrara*

Plaintiff seeks to hold Ferrara individually liable for his

participation in the alleged discrimination and retaliation she

experienced during her employment at Covenant.  The NJLAD

includes a prohibition that goes beyond employers and provides

---

department employees Brown and Dennis – Plaintiff cannot
maintain her discrimination and retaliation claims.  Plaintiff's
testimony supports why her NJLAD violation claims fail against
Ferrara individually, as discussed in the next section above,
but it does not serve as a complete defense to Plaintiff's
claims against Covenant.  A business entity acts through its
employees, and the NJLAD provides that "employers" are liable
for acts of employment discrimination.  See N.J.S.A. 10:5–12(a).
Covenant has not articulated why Banks' actions as Plaintiff's
direct supervisor, and his communication to Covenant "decision
makers" about her, should not make Covenant vicariously liable
for its employees' actions.  See Cicchetti v. Morris County
Sheriff's Office, 947 A.2d 626, 643 (N.J. 2008) (explaining that
if a supervisor acted within the scope of his or her authority
in circumstances in which the employer had delegated that
authority, and if the NJLAD violation was aided by that grant of
authority, the employer would be vicariously liable); cf. Staub
v. Proctor Hosp., 562 U.S. 411, 415 n.1 (2011) (citation
omitted) (explaining that in a "cat's paw" case, a plaintiff
seeks "to hold his employer liable for the animus of a
supervisor who was not charged with making the ultimate
employment decision").  Thus, even if Plaintiff did not believe
that Ferrara, Brown or Dennis directly discriminated against
her, Banks' alleged discriminatory actions and statements, which
were credited by Ferrara, Brown, and Dennis, may impose
liability for NJLAD violations on Covenant.

(2) Plaintiff argues that the Court may consider as "me too"
evidence lawsuits filed by seven former Covenant employees
against Covenant for various forms of discrimination as
additional evidence of pretext.  The Court does not need to
consider this evidence in resolving Defendants' motion for
summary judgment, and the Court takes no position at this time
as to whether such evidence may be admissible at trial.

that "[i]t shall be ... unlawful discrimination ... [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the NJLAD] . . . ." N.J.S.A. 10:5-12(e).  The words "aiding and abetting" require active and purposeful conduct, and in order to hold an employee liable as an aider or abettor, a plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation."  Cicchetti v. Morris County Sheriff's Office, 947 A.2d 626, 645 (N.J. 2008).

Plaintiff has not provided sufficient evidence that Ferrara's actions went beyond the scope of an employee's conduct that is typically imputed to his employer such that he would rise to the level of an "aider and abettor."  See, e.g., id. at 646 ("Although each [individual defendant] undoubtedly had responsibility over the employees and over the workplace, and although there is evidence that they failed to act so as to protect plaintiff or effectively respond to his complaints of discrimination, their acts are imputed to plaintiff's employer . . . as a result of their status as supervisors.  A different paradigm applies to plaintiff's efforts to hold them

18

individually liable, however.  Standing alone, the acts and failures to act that plaintiff attributes to the Sheriff and Undersheriff fall well short of the 'active and purposeful conduct' . . . .").  Consequently, Ferrara is entitled to summary judgment on Plaintiff's claims against him.

**CONCLUSION**

For the reasons expressed above, Plaintiff's claims that Covenant violated the NJLAD by treating her differently because she is a woman and by retaliating against her because she complained about this mistreatment may proceed to trial. Accordingly, Covenant's motion for summary judgment on those claims must be denied.  Plaintiff's claims against Dominic Ferrara for individual liability for the alleged NJLAD violations fail as a matter of law, and summary judgment must be entered in his favor.

An appropriate Order will be entered.


Date:  February 1, 2017                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.